## Rutherford National Bank v. Safian et al.

644

*Kennard Lewis* and *Bernard Goodman*, for plaintiff.
*Arlington W. Williams*, for defendants.

SHULL, P. J., September 8, 1943.—On October 25, 1941, Jack Safian and Josephine Safian caused to be issued a writ of foreign attachment against Bernard Zambell. Under this writ of attachment, an automobile which was in the possession of Bernard Zambell and at the garage of one George Wagner in Mount Pocono, Pa., was attached by the Sheriff of Monroe County. On January 12, 1942, the Rutherford National Bank presented its petition for a rule to show cause why an issue should not be framed to determine the ownership of the said automobile and duly filed its sworn claim of property with the Sheriff of Monroe County, and the issue before this court is whether or not the attaching creditors, Jack Safian and Josephine Safian, his wife, are entitled to a priority of claim against the attached automobile over and against the claim of the Rutherford National Bank, the assignee of the conditional sale vendor.

*Findings of fact*

1. On June 23, 1941, the Sanford Motor Car Company of Rutherford, N. J., sold to Bernard Zambell of Rutherford, N. J., a 1941 Hudson club coupe automobile, bearing serial no. and motor no. 1421518, for the sum of $1,406.72, to be paid as follows: $518 in cash and the balance of $888.72 in 24 installment payments due on the 23rd day of each and every month thereafter.

2. The sale was subject to a written contract, commonly known as a "conditional sale contract," which provides that title to the motor vehicle shall remain in the seller until all the amounts due thereunder are fully paid and the buyer has fulfilled all other conditions thereunder.

3. Said conditional sale agreement was assigned by Sanford Motor Car Company to the Rutherford National Bank of Rutherford, N. J. (Lyndhurst Branch), on the same day it was executed.

4. The conditional sale contract was duly filed with the Commissioner of Motor Vehicles of the State of New Jersey, who made a notation on the certificate of title of the said motor vehicle showing the existence of the reservation of title and indexing under the name of the purchaser.

5. Under the laws of the State of New Jersey, notation on the records of the Commissioner of Motor Vehicles constitutes a recording within the provisions of the Conditional Sales Act of the State of New Jersey (R. S. 46:32-13, formerly chapter 186 of the Laws of 1936; and R. S. 39:10-14, formerly chapter 185 of the Laws of 1936).

6. The contract was not filed or recorded in this county nor in the Commonwealth of Pennsylvania.

7. The Rutherford National Bank is a general banking institution, is not a dealer in motor vehicles, and never had physical possession of the automobile involved in this suit.

8. On the date the car was delivered to Zambell, he gave a note to the Rutherford National Bank and that bank loaned him the money to buy the car.

9. Possession of the car was delivered to Zambell by Sanford Motor Car Company.

10. On October 25, 1941, the aforesaid motor vehicle, while being operated by Bernard Zambell on a pleasure trip in Monroe County, Pa., became involved in a motor vehicle collision as the result of which Jack Safian and Josephine Safian are alleged to have sustained personal injuries.

11. On the same date, to wit, October 25, 1941, Jack Safian and Josephine Safian caused to be issued a writ of foreign attachment against Bernard Zambell, which action was listed in the Court of Common Pleas of Monroe County, to no. 42, December term, 1941.

12. The Sheriff of Monroe County made a return of nihil habet as to the defendant Bernard Zambell but attached as commanded, on October 25, 1941, in the garage of George Wagner, at Mount Pocono, Monroe County, Pa., said Hudson club coupe automobile, finding the same in the possession of an employe of said George Wagner who was summoned as garnishee.

13. On the date of the accident and foreign attachment, Bernard Zambell was in default under the terms of his conditional sale agreement by reason of his nonpayment of the installment due October 23, 1941.

14. The conditional sale agreement further provides that default shall exist thereunder if the vehicle shall be attached, levied upon, seized in any legal proceedings, or held by virtue of any lien or distress.

15. The balance due under the contract on the date aforesaid was in the amount of $777.63.

16. On January 12, 1942, the Rutherford National Bank duly filed its sworn claim of property with the Sheriff of Monroe County and filed its petition for rule to show cause why an issue should not be framed to

determine the ownership of the Hudson club coupe automobile levied upon, and on the same day rule to show cause was made absolute and issue framed.

17. The situs of this automobile is the State of New Jersey.

18. This automobile had been within the Commonwealth of Pennsylvania one day at the time of the attachment.

19. This automobile, at the time of this attachment, was temporarily within the Commonwealth of Pennsylvania.

20. There was no intent to change the situs of this automobile from the State of New Jersey to the Commonwealth of Pennsylvania.

21. The claimant bank succeeded, by proper assignment, to the rights of the Sanford Motor Car Company, the original conditional vendor of the motor vehicle to Bernard Zambell, the attachment defendant.

22. The law of the State of New Jersey pertaining to conditional sales contracts has been fully complied with, so that the rights of the conditional vendor and its assignee, the claimant bank, were properly protected in accordance with the laws of the State of New Jersey.

23. The conditional vendor or its assignee became entitled to immediate possession of the motor vehicle by reason of default.

24. The law in the State of New Jersey is as follows:

"The conditional sale contract or copy thereof shall be filed in the office of the recording officer in the county in which the goods are first kept for use by the buyer after the sale; provided, that in the case of the conditional sale of any motor vehicle the record of such sale with the Commissioner of Motor Vehicles, as provided for by Chapter 10 of Title 39, Motor Vehicles and Traffic Regulation, Paragraph 39, Chapter 10-1, et seq., shall be deemed sufficient compliance with the provi-

sions of this Chapter as to filing, wherever such motor vehicle may be found from time to time. . . .

"The Commissioner shall make a notation on the record or abstract of title of every motor vehicle registered with him, which may be sold upon contract of conditional sale, or other form of instrument reserving title to such motor vehicle in the seller showing the existence of such reservation of title, and to index the same under the names of the purchasers thereof as long as the lien remains unsatisfied of record."

### Discussion

The contract before us was executed in the State of New Jersey, all of the parties thereto are residents of the State of New Jersey, and, therefore, the rights of the parties to this contract are to be construed in accordance with the laws of that State. In both the State of New Jersey and the Commonwealth of Pennsylvania, what is commonly known as the "Uniform Conditional Sales Act" (Act of May 12, 1925, P. L. 603) is, by reason of legislative enactment, the law relative to conditional sales. Respondents in this rule contend that this agreement is invalid for the reason that this automobile was never in the possession of the assignee of the conditional sale vendor, but, as we view it, the Act of June 27, 1939, P. L. 1135, sufficiently answers this contention, and we feel that the discussion by the court in the case of In re Fell, 16 Fed. Supp. 987, and their findings therein are sound, and are adopted by us. In that case the court said (p. 988) :

"This brings us to the question whether the notation of the pledgee's lien on the certificates of title was such notice to the trustee in bankruptcy, who stood in the position of an execution creditor, as made it unnecessary for the pledgee to take possession. This question finds its answer in the provisions of the Pennsylvania Vehicle Code and particularly section 208 thereof, as

amended by the Act of May 25, 1933, P. L. 1059 (75 PS Pa. §38). Section 208 is a part of article 2 of the Code (75 PS Pa. §31 et seq.), which provides for the issuance by the Secretary of Revenue of certificates of title for motor vehicles. The act requires the issuance of such certificates by the secretary for all motor vehicles owned by residents of Pennsylvania, other than manufacturers, jobbers and dealers. It provides that in making application for a certificate of title the owner shall include a statement of any liens or encumbrances on the vehicle and the secretary shall issue a certificate of title upon which the said liens or encumbrances shall be shown. The act of 1933, the purpose of which is stated in its title to be, inter alia, to determine 'the effect of the issuance of a certificate of title showing a lien or encumbrance', amended section 208 of article 2 of the Code by adding, inter alia, the following clause: 'The certificate of title, when issued by the secretary, showing a lien or encumbrance shall be adequate notice to the Commonwealth, creditors, and purchasers that a lien against the motor vehicle exists, and *failure to transfer possession of the vehicle shall not invalidate said lien or encumbrance.*'

"What is the effect of this amendment? A careful examination of the Pennsylvania cases fails to disclose any reported decision construing its terms. We must, therefore, place our own interpretation upon it. When we consider its provisions in the light of the existing law, it seems clear that it is intended to be a *recording* act, the purpose of which is to provide a method whereby notice of a lien or encumbrance placed upon a motor vehicle may be given to creditors of and purchasers from the pledgor so as to bind them without requiring the pledgor to give up physical possession of the vehicle to the pledgee. It seems to us that this intent is manifest from the language of the amending act. It provides that the notation of the lien or encum-

brance on the certificate of title of the motor vehicle 'shall be adequate notice to the Commonwealth, creditors, and purchasers that a lien against the motor vehicle exists.' As we have pointed out, purchasers and creditors with notice are bound by a pledge valid between the parties, even though no transfer of possession has taken place. It therefore follows that the effect of this statutory provision is to eliminate the requirement for such a transfer of possession. That this was the legislative intention is made certain by the provisions which follow immediately that 'failure to transfer possession of the vehicle shall not invalidate said lien or encumbrance.' " (Italics supplied.)

The respondents in this rule further contend:

"It is our position that if the claimant wished to protect itself against attaching creditors in the Commonwealth of Pennsylvania it should have recorded its contract with the recorder in the county in which the goods were first kept for use by the buyer after the sale; that it is the policy of the Commonwealth of Pennsylvania to require public recording, and that this claimant had the opportunity of public recordation under the New Jersey statute, but elected to follow a different procedure, and that the Pennsylvania courts will not recognize a conditional sales contract of another State where it was not publicly recorded in the manner provided by the Pennsylvania statute."

This position concedes that the contract involved here would, had it been recorded with the recorder in the county in which this automobile was first kept, have been a bar to the right of attachment in Pennsylvania arising from the tort of Zambell in the Commonwealth of Pennsylvania. Accepting this as sound law, which we do, we then meet the question whether, as to a claimant of damages for tort, a contract of conditional sale made in another State, which contract is of a type authorized under the laws of this Common-

wealth in the instance of such conditional sales of automobiles, will, by reason of the fact that the laws of the foreign State relative to the registering or recording of such contracts provide for registering or recording in a manner differing from the registering or recording as provided by the laws of this Commonwealth, be paramount under our law to a claim of ownership based upon the default clause of the contract and advanced by the assignee of the conditional sale vendor.

The purpose of recordation of conditional sales is to bar the iniquities which would grow out of the recognition as against the public—anyone without notice, purchasers, creditors, etc.—of secret contracts affectting the title to personal property. Such contracts are, of course, valid as between the parties to the contract and against anyone having notice of the contract. Recordation of the contract at a place designated by an act of assembly for the keeping of such records by a designated public officer, which records are open to the public and from which information of the nature and contents of the contract can be obtained by proper inquiry, always has been notice to the public of the existence and nature of the contract, and in the State of New Jersey, to our mind, beyond question the Rutherford National Bank has a valid title, defendable against the world. It is true that the question before us is not based upon an action brought by one party to the contract against another party thereto. The controversy before us arises by reason of a foreign attachment of the automobile, which attachment is based upon a claim for damages for tort of Zambell, the conditional sale vendee, and this controversy presents a question of the validity, under the laws of Pennsylvania, of the title of the assignee of the conditional sale vendor as against a creditor of Zambell, the conditional sale vendee. Whatever could be attached under this writ of foreign attachment must, in the eyes of the law of Pennsylvania, be held to be the property of Zambell,

otherwise it could not be taken and applied to the satisfaction of his obligation. Inasmuch as a recording of the contract now before us with the Commissioner of Motor Vehicles is a public recording and, therefore, notice to all the world of the contract, and inasmuch as such recording is, under the statutes of New Jersey, a sufficient compliance in the instance of motor vehicles with the Conditional Sales Act, the title of the Rutherford National Bank to the motor vehicle here in question under this contract is, as we have said, valid in the State of New Jersey as against creditors or any other claimant through Zambell. As we view it, the facts in this case are on all fours with the case of Yellow Manufacturing Credit Co. v. Newhard et al., 23 D. & C. 116, and with the conclusions reached by his Honor, Judge McCluskey, in that case and set forth in a well-considered opinion therein filed, we fully agree. In that case Judge McCluskey said (p. 122) :

"In the case of Hare & Chase, Inc., v. Tomkinson et al. (N. J. 1925), 129 Atl. 396, the facts are as follows: A truck had been purchased by one Tomkinson from the Mack Corporation. Tomkinson lived in New Jersey, but his place of business was in the City of Philadelphia. His business was the transportation of goods between Philadelphia and Atlantic City. The truck was ordinarily kept in Philadelphia when not in use at Atlantic City. The truck, according to the terms of the contract, was leased or loaned to Tomkinson. The truck was seized on an execution issued out of a New Jersey court. It was contended that the truck was removed from Philadelphia into a New Jersey district, and that, under section 14 of the Uniform Conditional Sales Act, the seller had failed to file a copy of the contract within 10 days after it had received notice that the truck in question had been removed to a district in New Jersey.

"Upon this state of facts, the court said, inter alia: 'The contract between the Mack Corporation and Tomkinson was made in Philadelphia. The situs of the

truck was Philadelphia. The word "removal" in the New Jersey statute does not mean a mere bringing of the truck within the territorial limits of New Jersey. If this were the law, then no seller who had sold in some other state an automobile upon the installment plan, with reservation of title, could have his rights protected under the agreement by which the automobile was sold against a New Jersey creditor, if the automobile was brought within the state of New Jersey. As most automobiles are sold upon the installment plan, it can be readily seen to what such a construction of the act of 1919 would lead. This was not the intention of the Legislature. It seems to me that by fixing the situs of the truck in Pennsylvania, as was done by the agreement, a removal to New Jersey, within the meaning of the statute, could only be accomplished by the buyer forming, first, an intent in his mind to remove the truck to New Jersey; and, secondly, actually removing the truck to some place in New Jersey which the buyer fixes as the New Jersey situs of the truck. It is like a change of domicile. A change of domicile can only be accomplished by a person intending, first, to change his domicile, and secondly, actually changing it. The two things must concur. They must both be present, namely, the intention and the actual change.

. . . .

" 'There is nothing in the evidence in the present case which indicates that Tomkinson had any intention of removing the situs of the truck to New Jersey. The mere fact that it was used in New Jersey in the manner it was, or bore a New Jersey license tag was no evidence of a removal within the meaning of the statute as above defined. It was necessary for the judgment creditor to prove the change of situs. There was no evidence of it. Therefore, the truck was protected under the agreement made in Pennsylvania which gave a Pennsylvania situs to the truck.'

"We adopt what was said by the court in Hare & Chase, Inc., v. Tomkinson et al., supra, as controlling in the instant case, as well as what was said in the case of Forgan et al., Trustees, v. Smedal, Sheriff, 203 Wis. 564, 234 N. W. 896. In the instant case, we find a truck having a situs in the State of New Jersey, temporarily engaged in conveying coal from the State of Pennsylvania, through the County of Northampton, to the State of New Jersey. While thus engaged, the truck became involved in an accident in Northampton County, Pa. As a result of said accident, it was taken to a garage for repairs and while there was levied upon by the sheriff in attachment proceedings on an action growing out of the accident. The vendees had no intention of changing the situs of the truck from New Jersey to Pennsylvania. We hold that such temporary presence of said truck in the State of Pennsylvania was not such a removal as is contemplated by section 14 of the Uniform Conditional Sales Act, and that under the circumstances it was not necessary for the claimant to file the conditional sales agreement, or a copy thereof, in Northampton County in order to protect its reservation of property in the truck. Therefore, the conditional sales agreement is valid as against Allen Newhard, the attaching creditor, and paramount to the attachment secured by him."

In the instant case we have an automobile having a situs in the State of New Jersey, temporarily in the Commonwealth of Pennsylvania, having been driven to Mount Pocono on a pleasure trip by Zambell, the conditional sale vendee. It was but temporarily within the County of Monroe and the Commonwealth of Pennsylvania, it having been here but one day and with nothing to show or indicate any intent to change the situs of the automobile to the County of Monroe or anywhere else within the Commonwealth of Pennsylvania.

This attachment plaintiff further takes the position and urges that even though this contract be recognized

as valid and binding between the parties in Pennsylvania, as well as in New Jersey, the attachment plaintiff may, under this writ, attach the interest of the conditional sale vendee, pay to the assignee of the conditional sale vendor the unpaid balance due under the conditional sale contract, and thereby have recourse to the claim property bond which has here taken the place of the attached automobile for the payment of his damage or such part of his damage as the attachment defendant's interest in the car would satisfy. In support of this position, counsel for plaintiff cites Coffin v. Northwestern Mutual Fire Assn., 249 Pac. 89. In that case the Supreme Court of Idaho held (p. 90) :

"A creditor of the conditional vendee may attach the interest of the buyer, pay the portion of the price remaining due, and by doing so acquire the right to treat the full ownership as belonging to the buyer."

With the equity of this, we are in full accord, and believe it to be sound law, but in this case the question arises as to what, if any, under this contract which is in default by reason of its provisions, is the interest of this attachment defendant (conditional sale vendee) in this automobile. The conditional sale agreement provides:

"Default shall exist hereunder (1) if the buyer shall fail to pay any part of the purchase price when due, (2) if the buyer shall or shall attempt to (a) remove or allow removal of the vehicle from the state where the buyer now resides, (b) sell, encumber or otherwise dispose of the vehicle or its interest therein, (c) hire out or let the vehicle, (d) carry passengers in the vehicle for hire, (e) misuse or abuse the vehicle, or (f) use or allow the use of the vehicle in connection with any undertaking prohibited by law, (3) if bankruptcy or insolvency proceedings shall be instituted by or against the buyer, or (4) if the vehicle shall be attached, levied upon, seized in any legal proceeding, or held by virtue of the lien or distress.

"In the event of default or the breach of any undertaking of or condition to be performed by the buyer (1) the entire unpaid balance of the purchase price shall, at the option of the seller, become due, and (2) the buyer agrees upon demand to deliver the chattel to the seller, or the seller may, with or without legal process, and with or without previous notice or demand for performance, enter any premises wherein the vehicle may be, and take possession of the same, together with anything therein, and the seller may make such disposition of the vehicle as it shall see fit, retaining all payments made; the seller may in its discretion, subject to any applicable provisions of the law, sell the vehicle with or without notice, at public or private sale, and may purchase the vehicle at such sale."

The October payment as provided by this contract was in default prior to the happening of the collision and resulting damage upon which this attachment creditor bases his claim. As to the provision of this contract that if the vehicle shall be attached, levied upon, seized in any legal proceeding, or held by virtue of the lien or distress, a default occurs under which the vendor may take possession of and dispose of the automobile as he sees fit, we would without hesitation hold that as to this creditor this provision is unenforcible, being against public policy, for such provision opens wide a door to fraudulent escape from liability, at the expense of injured parties with just claim against the owner and operator of the automobile, which justly should rest upon the operator of an automobile upon public highways.

As to the default resulting from the vendee's failure to meet the payment due October 23, 1941, under the conditional sale agreement, such provision in a conditional sale contract is usual and generally recognized as enforcible under the law of the Commonwealth of Pennsylvania as well as elsewhere, and in this case is

enforcible even as against this creditor of the conditional sale vendee. Though the circumstances disclosed by the record before us, to wit, that the automobile was attached October 25, 1941; the claim of property by the assignee of the vendor was not made until January 12, 1942; payments by this vendee were made to the assignee of the vendor as follows: $148.12 on January 21, 1942; $37.03 on each of the following dates: February 14th, March 23rd, April 24th, May 22nd, June 26th, July 24th, and August 28, 1942; $74.06 was paid on October 21, 1942; and $37.03 was paid on each of the following dates: November 23rd and December 23, 1942, and on January 27, 1943, which amount in each instance is either the exact amount, $37.03, or a multiple of the same in accord with the provisions for payment in the conditional sale agreement before us, cast a suspicion on the good faith of the transaction between the assignee of the conditional sale vendor and the vendee, however, in view of the right of this assignee of the conditional sale vendor to dispose of this automobile to whom it might please, if it had taken possession of it under the default clause of the conditional sale contract, suspicion is not sufficient to warrant this court in holding (as we would hold if it were shown on the record that the claim of property were not made in good faith) that default had been waived and the agreement actually continued between the parties and no new sale or agreement of sale made relative to it and that, therefore, the interest of this vendee had not terminated with the claim of the vendor under the default-in-payment clause of the conditional sale contract. But, under the conditions before us, it is our view that the interest of this conditional sale vendee terminated by reason of the default in payment prior to the time of the attachment, which default was followed by a claim of property by the assignee of the conditional sale vendor,

and therefore the conditional sale vendee had no interest in this automobile subject to attachment as against a claim of the assignee of the conditional sale vendor based upon that default.

### Conclusions of law

1. The claimant bank succeeded, by proper assignment, to the rights of the Sanford Motor Car Company, the original conditional vendor of the motor vehicle to Bernard Zambell, the attachment defendant.

2. The law of the State of New Jersey pertaining to conditional sales contracts has been fully complied with so that the rights of the conditional vendor and its assignee, the claimant bank, were properly protected in accordance with the laws of the State of New Jersey.

3. The motor vehicle sold upon the conditional sale contract, duly recorded in the State of New Jersey, was but temporarily in the State of Pennsylvania at the time of the attachment proceedings.

4. At the time of the attachment proceedings, Bernard Zambell, the conditional vendee, was in default under the terms of his conditional sale contract and the conditional vendor or its assignee became thereby entitled to the immediate possession of the motor vehicle.

5. The conditional sale agreement in this case is valid against Jack Safian and Josephine Safian, the attaching creditors, and paramount to the attachment secured by them.

6. A provision in a conditional sale contract, that "if the vehicle shall be attached, levied upon, seized in any legal proceeding, or held by virtue of the lien or distress," the vendee shall be in default under the conditional sale contract and the vendor may take the property as his own, is, as against a creditor of the vendee, unenforcible, being against public policy.

7. A creditor of a conditional sale vendee, in a conditional sale agreement which is not in such default

as would under the agreement entitle the vendor to take the property as his own, may attach the interest of the vendee and may pay the portion of the sale price unpaid under the conditional sale agreement and by so doing acquire the right to treat the full ownership as belonging to the vendee.

8. A vendee in default under a valid default provision in a conditional sale agreement, which agreement gives to the vendor the right upon default to take possession of and thereby acquire title to the property covered by the agreement, has no interest in the property which may be attached by a creditor of the vendee unless such default has been waived by the vendor.

### Order and decree

And now, September 8, 1943, it is ordered, adjudged, and decreed that the attachment be dissolved, the claim property bond is discharged and all liability under it shall cease, and that the costs be paid by Jack Safian and Josephine Safian.